## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SEAN PEAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TRINE ACQUISITION CORP., LEO | ) | |
| HINDERY, JR., M. IAN G. GILCHRIST, | ) | |
| JOSEPHINE LINDEN, MARC | ) | |
| NATHANSON, KENT R. SANDER, TOM | ) | |
| WASSERMAN, ABBAS F. ZUAITER, | ) | |
| SPARROW MERGER SUB, INC., and | ) | |
| DESKTOP METAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      On August 26, 2020, Trine Acquisition Corp.'s ("Trine" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused Trine to enter into an agreement and plan of merger (the "Merger Agreement") with Sparrow Merger Sub, Inc. ("Merger Sub") and Desktop Metal, Inc. ("Desktop Metal").

2.      Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Desktop Metal, with Desktop Metal surviving as a wholly-owned subsidiary of Trine; and (ii) Trine will issue shares of Trine Class A common stock to stockholders of Desktop Metal (the "Proposed Transaction").

3.     On November 10, 2020, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission ("SEC"), which recommends that Trine's shareholders vote in favor of the Proposed Transaction at a special meeting of stockholders scheduled for December 8, 2020.

4.     The Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Trine common stock.

9.     Defendant Trine is a Delaware corporation and maintains its principal executive offices at 405 Lexington Avenue, 48th Floor, New York, New York 10174.  Trine's common stock

is traded on the New York Stock Exchange under the ticker symbol "TRNE."

10.     Defendant Leo Hindery, Jr. is Chief Executive Officer and Chairman of the Board of the Company.

11.     Defendant M. Ian G. Gilchrist is President and a director of the Company.

12.     Defendant Josephine Linden is a director of the Company.

13.     Defendant Marc Nathanson is a director of the Company.

14.     Defendant Kent R. Sander is a director of the Company.

15.     Defendant Tom Wasserman is a director of the Company.

16.     Defendant Abbas F. Zuaiter is a director of the Company.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Trine, and a party to the Merger Agreement.

19.     Defendant Desktop Metal is a Delaware corporation and party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

### Background of the Proposed Transaction

20.     On August 26, 2020, Trine's Board caused the Company to enter into the Merger Agreement with Merger Sub and Desktop Metal.

21.     Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Desktop Metal, with Desktop Metal surviving as a wholly-owned subsidiary of Trine; and (ii) Trine will issue shares of Trine Class A common stock to stockholders of Desktop Metal.

22.     According to the press release announcing the Proposed Transaction:

Desktop Metal, Inc. ("Desktop Metal" or the "Company") a leader in mass production and turnkey additive manufacturing solutions, announced today it will become a publicly listed company in order to accelerate its growth trajectory within the rapidly growing additive manufacturing market and capitalize on the strong secular tailwinds supporting the reshoring of manufacturing and supply chain flexibility. The Company has signed a definitive business combination agreement with Trine Acquisition Corp. (NYSE: TRNE), a special purpose acquisition company led by Leo Hindery, Jr. and HPS Investment Partners, a global credit investment firm with over $60 billion in assets under management. Upon closing of the transaction, the combined operating company will be named Desktop Metal, Inc. and will continue to be listed on the New York Stock Exchange and trade under the ticker symbol "DM.". . .

Transaction Overview

Pursuant to the transaction, TRNE, which currently holds $300 million in cash in trust, will combine with Desktop Metal at an estimated $2.5 billion pro forma equity value. Assuming no redemptions by TRNE's existing public stockholders, Desktop Metal's existing shareholders will hold approximately 74 percent of the issued and outstanding shares of common stock immediately following the closing of the business combination.

Cash proceeds in connection with the transaction will be funded through a combination of TRNE's cash in trust and a $275 million fully committed common stock PIPE at $10.00 per share, including investments from funds and affiliates of Miller Value Partners, XN, Baron Capital Group, Chamath Palihapitiya, JB Straubel, and HPS Investment Partners.

The boards of directors of both Desktop Metal and TRNE have unanimously approved the proposed transaction. Completion of the proposed transaction is subject to approval of Trine and Desktop Metal stockholders and other closing conditions, including a registration statement being declared effective by the Securities and Exchange Commission, and is expected to be completed in the fourth quarter of 2020. . . .

Advisors

Credit Suisse is serving as the exclusive capital markets advisor to Desktop Metal and as sole private placement agent to TRNE. BTIG, LLC is serving as financial and capital markets advisor to TRNE. Latham & Watkins LLP is serving as legal advisor to Desktop Metal, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor to TRNE. ICR is serving as investor relations and communications advisor to Desktop Metal.

*The Prospectus Omits Material Information, Rendering It False and Misleading*

23.    On October 15, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC in connection with the Proposed Transaction.

24.    On October 26, 2020, plaintiff sent a letter to counsel for defendants (the "Letter"), asserting that the Registration Statement omitted material information with respect to the Proposed Transaction, which rendered the Registration Statement false and misleading.

25.    Among other things, plaintiff alleged that the Registration Statement failed to disclose:

5.  The terms of the non-disclosure agreements executed by the Company during the process leading up to the execution of the Merger Agreement, including whether the agreements contained standstill and/or "don't ask, don't waive" provisions.

6.  The terms and values of the proposals and letters of intent submitted during the process leading up to the execution of the Merger Agreement.

7.  With respect to the "benchmarking analysis of Desktop Metal to existing publicly traded companies in analogous markets": (i) who performed the analysis; (ii) the companies observed in the analysis; (iii) the individual multiples and metrics for the companies; and (iv) the results of the analysis.

8.  With respect to the "discounted future enterprise valuation analysis": (i) who performed the analysis; (ii) the companies observed in the analysis; (iii) the individual multiples and metrics for the companies; (iv) the internal and unaudited prospective financial information used in the analysis; and (v) the results of the analysis.

26.    On November 2, 2020, defendants filed an amended Registration Statement with the SEC (the "Amended Registration Statement").

27.    The Amended Registration Statement added that "[t]wo of the non-disclosure agreements entered into with potential acquisition targets contained standstill provisions which restrict Trine from acquiring debt and equity securities of the potential acquisition targets for a specified period of time."  Amended Registration Statement at 180; Letter at ¶ 5.

28.     Further, the Amended Registration Statement disclosed the following (with the new information underlined):

On July 30, 2020, Mr. Henry and a representative of Credit Suisse held telephonic conferences to discuss the terms of a potential business combination transaction between Trine and Desktop Metal. Following this telephonic conference, Mr. Henry and other members of Trine's management team began to draft a letter of intent (the "Letter Agreement") to submit to Desktop Metal. . . .

Between August 3, 2020 and August 5, 2020, representatives of Trine and Desktop Metal discussed and negotiated the terms of the Letter Agreement. In particular, the representatives of Trine and Desktop Metal discussed and negotiated, among other things, the equity valuation of Desktop Metal, the appointment of one or more Trine representatives to the board of directors of the post-closing company, an exclusivity period to be binding on either Desktop Metal, Trine or both, and the range of timeline for the minimum to maximum size of proposed transaction. As part of these discussions and negotiations, the parties also discussed raising funds to be raised in the through a private placement of Trine common stock (the "PIPE Transaction") to be arranged, negotiated and documented alongside the negotiation and documentation of the potential business combination transaction between Trine and Desktop Metal, an exclusivity period to be binding on either Desktop Metal, Trine or both, and the timeline for the proposed transaction (the "PIPE Transaction") in order to expand Trine's sources of capital available to consummate the business combination transaction. In discussing and considering the PIPE Transaction, the parties agreed to a minimum and maximum size of the PIPE Transaction ranging from $150 million to $300 million (the "PIPE Transaction Range"). In considering and agreeing to raise funds through the PIPE Transaction and in the PIPE Transaction Range, the parties considered, among other things, the potential for redemptions from Trine's trust account in connection with the business combination transaction and the benefits of using funds raised in the PIPE Transaction as equity financing to consummate the business combination transaction. In agreeing to the PIPE Transaction Range, the parties also considered the amount of capital to be utilized by the post-closing company consistent with Desktop Metal's business plan, including the post-closing company's product development plans and potential future M&A activity.

Amended Registration Statement at 182; Letter at ¶ 6.

29.     Moreover, the Amended Registration Statement added the following:

**Comparable Company Considerations**

In considering the valuation of Desktop Metal, the Trine Board reviewed (i) a benchmarking analysis based on historical and consensus prospective financial results of Desktop Metal versus existing publicly traded companies in the Advanced Manufacturing, Technology-Enabled Industrial, and Legacy Additive

Manufacturing sectors (each further described below and together, the "Publicly Traded Benchmark Companies") and (ii) a valuation analysis based on a discounted future enterprise value methodology. The discounted future enterprise value methodology was considered appropriate and required since Desktop Metal's plans to launch its new products and Production system are forecasted to experience a phased path to commercialization and customer adoption. The discounted future enterprise value analysis requires applying the current market multiple of the peer group to a future revenue projection to estimate the future enterprise value of Desktop Metal, which can then be discounted to arrive at a present value for Desktop Metal. This results in a favorable comparison to Desktop Metal's $1.8 billion total enterprise value implied by the transaction, even when applying a conservative discount rate assumption.

The benchmarking analysis considered by the Trine Board was broken down into three distinct groups of public companies, and can be summarized as follows:

*Advanced Manufacturing:*   These selected companies sell products and services into additive manufacturing end markets. These companies face similar macro trends driven by end-user demand and operation activity. These companies generally are expected to have comparable gross margin and EBITDA margin profiles in 2021 as Desktop Metal in 2024E and 2025E, but lower rates of revenue growth.

*Technology-Enabled Industrial:*   These selected companies, while providing different products and services from Desktop Metal, share similar characteristics in terms of recurring and re-occurring revenue streams, high rates of revenue growth and comparable gross margin and EBITDA margin profiles.

*Legacy Additive Manufacturing:*   These selected companies sell additive manufacturing products and services based on legacy technologies, such as fused deposition modeling, fused filament fabrication, stereolithography, selective laser sintering, direct metal printing, multijet printing, and inkjet-based 3D printers using a range of materials including plastic, nylon, metal, composite, elastomeric, wax, thermoplastics, acrylic-based photopolymers, and stereolithography resins. The current commercial products sold by these companies have materially lower throughput, slower speeds, and are not focused on the mass production of end-use parts. While these companies sell products and services into the current additive manufacturing market, they generally are expected to have materially lower revenue growth rates, gross margins, and EBITDA margins profiles as compared to Desktop Metal.

The estimated 2019A-2021E revenue growth rate, estimated 2021E implied gross margin, and estimated 2021E implied EBITDA margin for the Publicly Traded Benchmark Companies are summarized in the table below. The Trine Board considered publicly available consensus research analysts' estimates and other publicly available information as of August 25, 2020. In addition, all estimates were calendarized to December year-ends.

| | 2019A–2021E Revenue CAGR | 2021E Gross Margin | 2021E EBITDA Margin |
|---|---|---|---|
| **Advanced Manufacturing** | | | |
| Materialise, NV | 5% | 53% | 13% |
| Proto Labs, Inc. | 1% | 51% | 25% |
| **Average** | **3%** | **52%** | **19%** |
| | | | |
| **Technology-Enabled Industrial** | | | |
| Autodesk, Inc. | 16% | 94% | 36% |
| Axon Enterprise, Inc. | 16% | 61% | 18% |
| Universal Display Corporation | 15% | 76% | 49% |
| PTC, Inc. | 12% | 76% | 32% |
| Cognex Corporation | 7% | 75% | 30% |
| Renishaw plc | 3% | NA | 25% |
| AMETEK, Inc. | –3% | 35% | 29% |
| **Average** | **9%** | **69%** | **31%** |
| | | | |
| **Legacy Additive Manufacturing** | | | |
| Stratasys Ltd. | –7% | 49% | 9% |
| 3D Systems Corporation | –10% | 43% | 11% |
| **Average** | **–9%** | **46%** | **10%** |

In addition, the Trine Board compared the estimated compound annual growth rate, for 2019 to 2021 and for 2019 to 2025 revenue, and implied margins of 2024 and 2025 gross profit and EBITDA for Desktop Metal to the average of the compound annual growth rate, for 2019 to 2021 revenue, and implied margins of 2021 gross profit and EBITDA for metrics for the Advanced Manufacturing, Technology-Enabled Industrial, and Legacy Additive Manufacturing companies. The summary of this comparison is as follows:

| | Revenue CAGR | | Gross Margin | | EBITDA Margin | |
|---|---|---|---|---|---|---|
| | Time Period | % | Time Period | % | Time Period | % |
| Advanced Manufacturing Average | 2019A–2021E | 3% | 2021E | 52% | 2021E | 19% |
| Technology-Enabled Industrial Average | 2019A–2021E | 9% | 2021E | 69% | 2021E | 31% |
| Legacy Additive Manufacturing | 2019A–2021E | –9% | 2021E | 46% | 2021E | 10% |

| Average | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Desktop Metal | 2019A–2021E | 71% | 2024E | 53% | 2024E | 23% |
| Desktop Metal | 2019A–2025E | 87% | 2025E | 54% | 2025E | 28% |

The Trine Board concluded that Desktop Metal's estimated compound annual growth rate, for estimated 2019 to 2021 revenue and 2019 to 2025, and implied margins, of 2024 and 2025 gross profit and EBITDA, were similar to or above the comparable companies' benchmarks. Specifically, the Desktop Metal metrics compare most closely to those of the Advance Manufacturing and Technology-Enabled Industrial companies.

In addition, the Trine Board reviewed an analysis of the estimated total enterprise value/revenue and estimated total enterprise value/EBITDA of each of the categories of the Publicly Traded Benchmark Companies. These were estimates based on publicly available consensus research analysts' estimates and other publicly available information as of August 25, 2020. In addition, all estimates were calendarized to December year-ends. In addition, all estimates were calendarized to December year ends.

| | TEV/CY'21 Revenue | TEV/CY'21 EBITDA |
| --- | --- | --- |
| **Advanced Manufacturing** | | |
| Materialise, NV | 7.9x | 59.2x |
| Proto Labs, Inc. | 7.4x | 30.1x |
| **Average** | **7.7x** | **44.6x** |
| | | |
| **Technology-Enabled Industrial** | | |
| Autodesk, Inc. | 12.9x | 35.4x |
| Axon Enterprise, Inc. | 6.8x | 37.6x |
| Universal Display Corporation | 14.8x | 30.0x |
| PTC, Inc. | 6.9x | 21.8x |
| Cognex Corporation | 13.5x | 44.4x |
| Renishaw plc | 5.7x | 23.2x |
| AMETEK, Inc. | 5.2x | 17.8x |
| **Average** | **9.4x** | **30.0x** |
| | | |
| **Legacy Additive Manufacturing** | | |
| Stratasys Ltd. | 0.9x | 10.1x |
| | | |
| 3D Systems Corporation | 1.3x | 12.0x |
| | | |
| **Average** | **1.1x** | **11.1x** |

The Trine Board compared the total enterprise value/estimated revenue and estimated EBITDA in 2024 and 2025 for Desktop Metal to the average total enterprise value/estimated 2021 revenue and average total enterprise value/estimated 2021 EBITDA for the Advance Manufacturing, Technology-Enabled Industrial, and Legacy Additive Manufacturing companies. The summary of this comparison is as follows:

| | TEV/Revenue | | TEV/EBITDA | |
|---|---|---|---|---|
| | Time Period | Multiple | Time Period | Multiple |
| Advanced Manufacturing Average | 2021E | 7.7x | 2021E | 44.6x |
| Technology-Enabled Industrial Average | 2021E | 9.4x | 2021E | 30.0x |
| Legacy Additive Manufacturing Average | 2021E | 1.1x | 2021E | 11.1x |
| Desktop Metal | 2024E | 3.1x | 2024E | 13.7x |
| Desktop Metal | 2025E | 1.9x | 2025E | 6.8x |

Using the aforementioned benchmarking data in conjunction with the total enterprise value/estimated revenue and Desktop Metal's financial forecast, the Trine Board utilized a discounted future enterprise value methodology to contextualize the total enterprise value implied by the Business Combination. A range of future total enterprise value/revenue multiples of 6.0x–10.0x were applied to Desktop Metal's 2025 estimated revenue, and discounted by 4.75 years to September 30, 2020 using a mid-year convention and a 20% discount rate. The implied discounted value range of $3.9–$2.4 billion was compared to the $1.8 billion total enterprise value, which implies a 54% to 23% discount for the transaction value of the Business Combination. This information allowed the Trine Board to determine that the terms of the Business Combination were fair to and in the best interests of Trine and its shareholders.

Amended Registration Statement at 193-95; Letter at ¶¶ 7-8.

30.     However, the Amended Registration Statement, as well as the Prospectus filed on November 10, 2020, continue to omit material information regarding the Proposed Transaction.

31.     With respect to Desktop Metal's financial projections, the Prospectus fails to disclose: (i) all line items used to calculate adjusted EBITDA; (ii) projected income/loss; and (iii) projected cash flows.

32.     The Prospectus fails to disclose Trine's financial projections.

33.     The Prospectus fails to disclose who performed the benchmarking analysis of Desktop Metal to existing publicly traded companies in analogous markets and the discounted

future enterprise valuation analysis.

34.     The Prospectus fails to disclose the financial analyses performed by the Company's financial advisor, BTIG, LLC ("BTIG"), as well as Trine's sole private placement agent and Desktop Metal's financial advisor, Credit Suisse Securities (USA) LLC ("CS"), in connection with the Proposed Transaction.

35.     The Prospectus fails to disclose the terms of BTIG's and CS's engagements, including: (i) the amount of compensation BTIG and CS have received or will receive in connection with their engagements; (ii) the amount of BTIG's and CS's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether BTIG and CS have performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by BTIG and CS for providing such services.

36.     The Prospectus provides that "[t]he Company may pay HPS Investment Partners, LLC ("HPS") or the HPS Funds, entities affiliated with one of the Company's directors, fees in connection with potentially providing financing or other investments in connection with the Initial Business Combination."  However, the Prospectus fails to disclose: (i) the role HPS played in the process leading up to the execution of the Merger Agreement; (ii) whether HPS provided "financing or other investments in connection with the" Proposed Transaction; (iii) the amount of fees HPS has received or will receive in connection therewith; and (iv) HPS's relationship with Desktop Metal or its affiliates.

37.     The omission of the above-referenced material information renders the Prospectus false and misleading.

38.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Trine**

39.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40.     The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Trine is liable as the issuer of these statements.

41.     The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

42.     The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

44.     The Prospectus is an essential link in causing plaintiff to approve the Proposed Transaction.

45.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements in the Prospectus, plaintiff is threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Desktop Metal**

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     The Individual Defendants and Desktop Metal acted as controlling persons of Trine within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or Board members of Trine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

49.     Each of the Individual Defendants and Desktop Metal was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Prospectus contains the unanimous recommendation of the

Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Prospectus.

51.     Desktop Metal also had supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

52.     By virtue of the foregoing, the Individual Defendants and Desktop Metal violated Section 20(a) of the 1934 Act.

53.     As set forth above, the Individual Defendants and Desktop Metal had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  December 2, 2020                      **RIGRODSKY & LONG, P.A.**

                                       By:   */s/ Timothy J. MacFall*
                                             Seth D. Rigrodsky
                                             Timothy J. MacFall
                                             Gina M. Serra
                                             825 East Gate Boulevard, Suite 300
                                             Garden City, NY 11530
                                             Telephone: (516) 683-3516
                                             Email: sdr@rl-legal.com
                                             Email: tjm@rl-legal.com
                                             Email: gms@rl-legal.com

                                             *Attorneys for Plaintiff*